IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STEVEN LUNDY, )
 )
Plaintiff, )
 ) Civil Action No.: 09 C 6333
v. )
 ) Suzanne B. Conlon, Judge
CITY OF CALUMET CITY, IL *et al.*, )
 )
Defendants. )
 )
 )

**MEMORANDUM OPINION AND ORDER**

Steven Lundy, a now-retired police officer from Calumet City, Illinois, filed a multi-count, multi-defendant action under 42 U.S.C. § 1983 and state law, alleging he was criminally prosecuted and faced employment termination proceedings in retaliation for exercising his right to free speech. Several of the counts and defendants have since been dismissed. The remaining defendants, Russell Larson, Michelle Qualkinbush, and the City of Calumet City move for summary judgment on the remaining counts of First Amendment retaliation, malicious prosecution, and indemnification. After the summary judgment motion was filed, Larson was dismissed by stipulation, and Lundy conceded summary judgment was appropriate on the malicious prosecution claim. For the following reasons, the rest of the motion is granted.

### I. Background

**A. Local Rule 56.1**

Defendants filed with their summary judgment motion a Local Rule 56.1 statement of undisputed facts. Lundy was required to respond to each statement of fact and specify the parts

1

of the record containing evidence that disputes any statement he disagreed with. N.D. ILL. L.R. 56.1(b)(3)(B). A general denial or objection to a fact without reference to admissible evidence results in that fact being deemed admitted. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Several times Lundy objects to a fact on the basis of materiality without admitting or denying the underlying fact. *See* Pl. Resp. ¶¶ 11-17, 19-21, 25, 28, 31-33, 39-40, 49-50, 52, 58-59, 65. Accordingly, those facts are admitted. *Ammons v. Aramark Uniform Servs., Inc.*, 468 F.3d 809, 817-18 (7th Cir. 2004).

Lundy submitted additional statements of material fact. Many statements do not comply with Local Rule 56.1, which requires Lundy to cite admissible record evidence supporting each statement. For example, the court assumes "LD" refers to Lundy's deposition. Lundy did not include a copy of his deposition and defendants attached only excerpts. The court disregards purported facts based on deposition pages that were not included in the record. *See* Pl. Facts ¶¶ 2-5. Other facts, discussed below as necessary, are not supported by admissible evidence and therefore are disregarded.

## B. Relevant Facts

The following facts are taken from the parties' statements of material facts and are undisputed unless otherwise noted. All disputes are resolved in Lundy's favor. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). During the time relevant to the complaint, Lundy was a Calumet City police officer, and Qualkinbush was the city's mayor. Defs. Facts ¶¶ 1-2. Lundy contends he spoke to Calumet City employees and citizens about Qualkinbush residing outside Calumet City and being unqualified to be mayor. Pl. Facts ¶ 14, 16-17. Defendants deny that Lundy spoke out, citing to parts of Lundy's deposition where he denied talking about

2

Qualkinbush with other police officers and denied spreading rumors about her. Defs. Resp. ¶ 14, 16-17. Lundy, however, listed the names of several people he spoke to and testified at his deposition that he spoke about Qualkinbush hundreds of times to citizens. Pl. Facts ¶¶ 16-17. The court must resolve this dispute in Lundy's favor and assumes he spoke to others about Qualkinbush. In June 2007, Lundy was working security detail at an outdoor summer concert. Defs. Facts ¶ 45; Pl. Facts ¶ 11. Qualkinbush approached him and accused him of telling others she did not live in Calumet City. Defs. Facts ¶¶ 45-46; Pl. Facts ¶ 11. She threatened she was going to have his job because of what he said. Defs. Facts ¶ 46; Pl. Facts ¶ 12.

On July 19, 2007, Lundy and another officer, Keith Paprocki, arrested two juveniles and took them to the police station. Defs. Facts ¶ 5; Pl. Resp. ¶ 5. Later, the police department received a citizen complaint that one of the juveniles was battered in the elevator at the station and began an investigation.[1] Defs. Facts ¶ 7. The officer investigating the complaint informed the police chief about the matter and obtained the video of the incident. *Id.* ¶ 8-11. The investigating officer concluded the video showed what appeared to be unprovoked use of excessive force by Lundy and Paprocki. *Id.* ¶ 11. He reviewed the video with the police chief, and they in turn watched it with members of the Calumet City command staff. *Id.* ¶¶ 11-12. The

---

[1] Lundy objects to this proposed fact on the basis of hearsay. Pl. Resp. ¶ 7. Defendants support this assertion with the deposition testimony of the police officer who investigated the complaint and with a copy of the complaint the juvenile's mother filed with the police department. Defs. Ex. 4 (Citizen Complaint), Ex. 19 (Augun Dep.). The citizen complaint is not authenticated, so it is unclear whether the court may consider it on summary judgment. *See Woods v. City of Chicago*, 234 F.3d 979, 987-88 (7th Cir. 2000) (documents must be admissible and properly authenticated to be considered on summary judgment). Defendants do not rely on the complaint to prove that Lundy battered the juvenile, rather they use it to show knowledge by the investigating police officer that a complaint was filed. Lundy's hearsay objection is therefore overruled.

3

police chief and his command staff decided to turn the video over to the Cook County State's Attorney's Office. *Id.* ¶ 13. The police chief believed Lundy's actions violated internal department rules and also might be criminal. *Id.* ¶¶ 14-15.

The police chief contacted a felony review supervisor at the State's Attorney's Office who had worked with the police department before. Defs. Facts ¶ 16. The felony review supervisor watched the video at the police station and then brought it to the attention of his supervisor. *Id.* ¶¶ 17-18. They turned the matter over to the Special Prosecutions Bureau of the State's Attorney's Office. *Id.* ¶ 18-19. The two state's attorneys assigned to the case concluded there was probable cause to believe Lundy and Paprocki committed a crime with their use of force against the juvenile. *Id.* ¶ 22. The chief of the Special Prosecutions Bureau agreed with the recommendation to seek an indictment, and a grand jury indicted Lundy and Paprocki on October 9, 2007, for official misconduct and battery. *Id.* ¶¶ 26-28. No Calumet City official influenced the state's attorneys' probable cause determination or decision to seek an indictment.[2] *Id.* ¶¶ 23, 29. The two prosecuting attorneys had no contact with Qualkinbush about the prosecution. *Id.* ¶ 24. Lundy and Paprocki were acquitted after a trial in January 2009. *Id.* ¶ 41.

The week before he was indicted, Lundy was placed on light duty at work. Pl. Facts ¶ 6. The next week, on or about October 9, 2007, the police chief filed termination charges against Lundy with the Board of Fire and Police Commissioners, the board with authority to terminate police officers for cause following a due process hearing. Defs. Facts ¶¶ 31, 34. A hearing was held on October 12, 2007. *Id.* ¶ 36. At that hearing, the board entered an agreed order in which

---

[2] Lundy flatly denies without citation to evidence that Calumet City officials were not involved. Pl. Resp. ¶ 29. The fact is deemed admitted.

4

Lundy acknowledged the existence of probable cause to move forward with the charges and agreed to be suspended without pay until the next hearing. *Id.* ¶¶ 37-38. The agreed order was signed by Lundy's attorney, and Lundy orally acknowledged the terms of the order at the hearing. *Id.* ¶ 37. Lundy does not deny the existence of the agreed order but asserts he did not approve or agree to it. Pl. Facts ¶¶ 8-9. For purposes of this motion, the court assumes Lundy did not agree to the order and treats the suspension as involuntary. On May 15, 2008, Lundy retired from the police department. Defs. Facts ¶¶ 39, 51. Paprocki was reinstated after the acquittal. *Id.* ¶ 41.

Qualkinbush did not learn about the criminal investigation or the termination charges against Lundy until a closed executive session meeting of the City Council on or about October 11, 2007. Defs. Facts ¶ 35.

## II. Analysis

### A. Legal Standard

Summary judgement is proper if "the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). If defendants meet their initial burden of showing summary judgment is appropriate, Lundy must submit evidence to show there is a genuine issue for trial. *Delta Consulting Group, Inc. v. R. Randle Const., Inc.*, 554 F.3d 113, 1137 (7th Cir. 2009). All reasonable inferences are drawn in Lundy's favor. *Purvis v. Oest*, 614 F.3d 713, 723 (7th Cir. 2010).

### B. First Amendment Retaliation

A public employee's First Amendment rights are limited, but not eliminated, by virtue of his employment. *Gross v. Town of Cicero*, No. 06-4042, 2010 WL 3365285, at *5 (7th Cir.

5

2010). A *prima facie* case of retaliation for exercising free speech rights requires an employee to show (1) his speech was constitutionally protected, (2) the employee suffered a deprivation likely to deter the exercise of his rights, and (3) the protected speech was a but-for cause of the employer's deprivatory action. *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 501 (7th Cir. 2010); *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010). When the person with the alleged retaliatory animus is not the person who committed the allegedly deprivatory action, the plaintiff must show a causal connection "between the retaliatory animus of one person and the action of another." *Hartman v. Moore*, 547 U.S. 250, 259, 262 (2006). In addition, in a retaliatory prosecution case, the plaintiff must plead and prove the absence of probable cause for the prosecution. *Id.* at 265-66; *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 626 (7th Cir. 2008).

Once a plaintiff has made out a *prima facie* case, the burden shifts to defendants to show the action would have been taken even without the retaliatory motive. *Swearnigen-El v. Cook County Sheriff's Dep't*, 602 F.3d 852, 861 (7th Cir. 2010). The plaintiff must prove the purported reason is pretextual in order to recover. *Id.* But see *Kodish*, 604 F.3d at 501 (expressing doubt whether burden shifting is still valid in First Amendment retaliation cases).

Defendants argue Lundy cannot establish a *prima facie* case of First Amendment retaliation because he never spoke out against Qualkinbush but only participated in the rumor mill. As discussed above, the court assumes Lundy spoke out against Qualkinbush. Speaking out, alone, is insufficient to establish the speech was protected. Only speech Lundy made as a private citizen on matters of public concern is protected. *Connick v. Myers*, 461 U.S. 138, 147-48 (1983); *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 671 (7th Cir. 2009). The court

6

need not decide if Lundy has shown a factual dispute about whether his speech was protected because he has not otherwise made out a *prima facie* case of retaliation.

Defendants seek to narrow the possible deprivations at issue. Lundy alleges three possible deprivations he suffered at the hands of Qualkinbush: (1) the criminal prosecution, (2) the termination charges and suspension before the board, and (3) his resignation. Defendants do not contest that the criminal charges or the proceedings before the board are actions likely to deter protected speech. Instead, they focus on Lundy's resignation and argue it cannot be a deprivation because it was a voluntary decision that did not rise to the level of a constructive discharge. Lundy argues his resignation was a constructive discharge because he was suspended without pay and unable to work as a police officer and because the board had not taken action by May 15, 2008.[3] The standard for constructive discharge is an objective one that looks to whether a reasonable person in the employee's position would have found the working conditions so intolerable that he felt compelled to resign. *Levenstein v. Salafsky*, 414 F.3d 767, 774 (7th Cir. 2005). Lundy seems to rest on the length of the suspension as the factor that turned his suspension without pay into an intolerable condition. But he does not explain the reasons for the delay that would lead him to believe the suspension was indefinite or unending. *Cf. Townsend v. Vallas*, 256 F.3d 661, 677-78 (7th Cir. 2001) (examining what plaintiff was told about duration and consequences of disciplinary proceeding in determining whether he was constructively discharged). Therefore, the only possible actionable deprivations are the criminal prosecution and termination proceedings.

---

[3] Lundy also asserts that he was told he was going to be terminated. But he does not support this statement with a citation to the record. The court will disregard his unsupported assertion.

Defendants argue Lundy cannot establish causation as to the retaliatory prosecution claim because Lundy has no evidence Qualkinbush or any other Calumet City official was involved in the decision to prosecute. Lundy admitted he could not connect Qualkinbush to the citizen complaint that set the investigation in motion. Defs. Facts ¶ 48. The only bases for his belief that Qualkinbush or another city official pushed the indictment forward were a conversation with his codefendant, Paprocki, information his brother learned from a state's attorney, and his belief that Qualkinbush and the police chief "work in concert." Defs. Facts ¶¶ 54-57; Pl. Facts 18; Lundy Dep. pp. 11-12, 80-97. Information Lundy obtained from Paprocki and his brother is hearsay and may not be considered. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). Lundy's unsupported assertion that Qualkinbush and the police chief work in concert is speculation and cannot form the basis of a genuine dispute. *See Payne v. Pauley*, 337 F.3d 767, 772 (2003) (reasonable inferences in affidavit must be grounded in first-hand personal experience and not based on speculations, hunches, intuitions, or rumors). Finally, Lundy does not dispute that Qualkinbush learned of the indictment only after it occurred. Defs. Facts ¶ 35; Pl. Resp. ¶ 35. It would have been impossible for her to have induced the prosecutors to bring the charges.

Defendants contend even if Qualkinbush possessed a retaliatory animus, the independent prosecutorial decision to charge Lundy severs the causal link. Lundy fails to respond to defendants' argument. In a retaliatory prosecution claim, Lundy must plead and prove the absence of probable cause. *Hartman*, 547 U.S. at 265-66. Rather than arguing about the existence of probable cause, Lundy focuses on rebutting the presumption under Illinois law that a grand jury indictment is *prima facie* evidence of probable cause. *See Freides v. Sani-Mode Mfg.*

*Co.*, 211 N.E.2d 286, 289 (Ill. 1965). That presumption, however, applies to the state law malicious prosecution claim, which is no longer at issue, not the federal retaliation claim. Lundy takes issue with the thoroughness of the investigation by the investigator who testified before the grand jury. He does not explain how any overlooked information would have defeated a finding of probable cause. Nor does he argue there was no probable cause for the charges. In fact, the evidence conclusively establishes there is no genuine dispute over the existence of probable cause.[4] At the grand jury proceeding, the investigator testified his investigation revealed that while on duty Lundy punched the juvenile in the elevator and caused the juvenile bruising and soreness. Pl. Ex. 5, pp. 4-5. This testimony establishes a probability that Lundy committed battery by intentionally causing bodily harm and committed official misconduct by battering the juvenile while on duty. *See* 720 ILCS 5/12-3 (battery), 33-3 (official misconduct); *Beauchamp v. City of Noblesville*, 320 F.3d 733, 743 (7th Cir. 2003) (probable cause is probability or substantial chance of criminal activity).

Next, defendants argue Lundy cannot establish causation as to the termination proceedings. They conclude the undisputed facts establish each police officer who viewed the video found that it depicted possible instances of excessive force, and the officers continued the investigation on that basis, not at Qualkinbush's urging. Defs. Facts ¶¶ 10-12. Lundy responds that the police chief's decision to bring termination charges and the board's actions can be attributed to Qualkinbush. He contends that she and the police chief work in concert and that the board's commissioners are appointed by the mayor and controlled by her. Defs. Facts ¶ 54; Pl.

---

[4] Defendants provide a copy of the video of the incident. It is not properly authenticated. Lundy does not object to the video as evidence, but it is unnecessary for the court to consider it because the grand jury transcript is admissible and suffices to establish probable cause.

9

Facts ¶ 15. These statements are supported by Lundy's deposition testimony in which he claimed this was true based on his general experience; he did not specify the basis for his opinion. Lundy Dep. pp. 64, 80, 118. Speculation and unsupported beliefs do not create genuine issues of fact.

Accordingly, Lundy cannot make out a *prima facie* case of First Amendment retaliation against Qualkinbush. Therefore, it is unnecessary to consider whether Lundy could show defendants purported legitimate, nondiscriminatory reasons for Lundy's prosecution and termination proceedings are pretextual.

**C. Calumet City**

Because Qualkinbush did not violate the Constitution, Calumet City also is entitled to summary judgment. *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000).

### III. Conclusion

For the reasons set forth above, defendants' motion for summary judgment is granted.

ENTER:

_____
Suzanne B. Conlon
United States District Judge

October 27, 2010